IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ALFRED MATARAZZO, <br><br>        Plaintiff, <br><br>  v. <br><br>CSENGE ADVISORY GROUP, LLC, <br><br>        Defendant. | CIVIL ACTION <br> NO. 19-3014 |

## OPINION

**Slomsky, J.**                                                        **June 3, 2020**

## I.  INTRODUCTION

On May 13, 2019, Plaintiff Alfred Matarazzo Jr. ("Plaintiff") filed suit against Csenge Advisory Group, LLC, ("Defendant") in the Court of Common Pleas of Montgomery County, Pennsylvania.  On July 11, 2019, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1332,[1] § 1441,[2] and § 1446.[3]

---

[1]   28 U.S.C. § 1332 (a)(1) states in relevant part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

      (1)  citizens of different States.

[2]   28 U.S.C. § 1332 (a) states:

   Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[3]   28 U.S.C. § 1446(a) provides as follows:

In the Complaint, Plaintiff asserts three cause of actions against Defendant: (1) breach of contract; (2) breach of good faith and fair dealing; and (3) negligence.  (Doc. No. 1.)  Plaintiff also seeks declaratory and injunctive relief.  On July 22, 2019, Defendant filed a Motion to Dismiss the Complaint.  (Doc. No. 3-1.)  On August 5, 2019, in response, Plaintiff filed an Opposition to Defendant's Motion.  (Doc. No. 5.)  On January 22, 2020, the Court held a hearing on the Motion.

The Motion to Dismiss is now ripe for disposition.  (Doc. No. 3-1.)  For reasons that follow, the Motion (Doc. No. 3-1) will be granted on forum non conveniens grounds.[4]

## II.    BACKGROUND

This action arises out of the Asset Purchase Agreement ("APA") executed on November 4, 2016, between Plaintiff Alfred Matarazzo's former company, Mainline Financial Advisors ("MLFA"), and Defendant Csenge Advisory Group, LLC.  (Doc. No. 3-1.)  MLFA was a Pennsylvania Limited Liability Company registered with the Securities and Exchange Commission as an investment adviser with its principal place of business in Pottstown, Pennsylvania.  (Doc. No. 5.)  It was in the business of providing securities brokerage services through FSC Securities Corporation ("FSC"), and offering investment advisory services to retail and corporate customers.  (Id.)  Defendant purchased MLFA's assets, including its customer

---

A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

[4]   In the Motion, Defendant requests that the Court grant dismissal based on forum non conveniens grounds.  Defendant suggests, however, Plaintiff has an alternative to proceeding in this case, which is to refile his claims as counterclaims in an action pending in state court in Pinellas County, Florida, in which Defendant has sued Plaintiff essentially for violating the same agreement involved here.  (See Doc. No. 3-1 at 30.)  The suit in Florida was filed first.

accounts, from his father by issuing promissory notes payable to his family ("Matarazzo Family Notes").  (Id.)  At some point after the purchase of the assets of MLFA by Defendant, Plaintiff moved to Montana.  (Id.)

At the time the parties entered into the APA, Plaintiff was the owner and operator of MLFA. (Id.)  MLFA had two key employees, Stephen Troutman ("Troutman") and Amery Koval ("Koval"), who worked in the Pennsylvania office.  (Id.)  Troutman was employed as Financial Advisor and Koval as Client Service Manager.  (Id.)  After Plaintiff sold the Assets of MLFA to Defendant, Troutman and Koval commenced employment with Defendant in their same positions. (Id.)  In addition, after Defendant acquired the Assets of MLFA, its books and records, which were initially located in Pennsylvania, were transferred in part over time to Florida.

Defendant is in the business of providing financial planning and wealth management advisory services.  (Id.)  It is a Limited Liability Company located in Clearwater, Florida.  (Doc. No. 3-1.)  The company has three members, John Csenge, Stephen Csenge, and Eric Caisse.  (Id.) All reside in and are citizens of the state of Florida.  (Id.)

Under the APA, MLFA agreed to sell and Defendant agreed to purchase all of MLFA's right, title, and interest in the assets of MLFA's businesses ("Assets"), including:

a.      All existing client lists, files and pertinent information for all such clients, including, but not limited to, names, addresses, Social Security numbers, phone numbers, account numbers, and copies of any correspondence with such clients.

b.      MLFA's name and goodwill.

c.      MLFA's continued assistance in the transition of the Client Accounts to [Defendant] which includes, but is not limited to Client Services, Client Meetings, Client Calls, follow up to client inquiries, Annual Client Reviews, handling day to day activities of the office, maintaining required compliance documentation for the office location, and normal activities of the Advisory business.

    d.      All of MLFA's commissions, trail commissions and other revenue derived from the Assets and Client accounts after closing as set forth in the [APA].

(Doc. No. 3-1 at 4-5.)

The APA provided that MLFA was to help transfer MLFA's clients to Defendant, support Defendant's efforts to retain those client accounts, and help Defendant become fully acclimated ("Transition Duties").  (Doc. No. 3-1.)  The APA stated that MLFA, by and through its officer, Plaintiff, would cooperate with Defendant post-sale and provide "continued assistance in the transition of the Client Accounts to [Defendant]".  (Id. at 5.)  Section 5.9 of APA outlines MLFA and Plaintiff's transition duties as follows:

…Support [Defendant's] efforts to retain those Client accounts and to become fully acclimated, as quickly as possible, to the Clients' needs and goals (collectively, the "Transition Duties"). [MLFA] will be obligated to perform the Transition Duties, as determined by [Plaintiff], and to otherwise be available to perform these Transition Duties, for a minimum of twenty-four (24) months following Closing.

(Doc. No. 5 at 8.)

In order to transition customers as described in Section 5.9, "Defendant was required to retain a qualified registered securities broker to manage the former MLFA accounts in Pennsylvania." (Doc. No. 1 at 15.)  When the APA was executed, FSC Securities was the broker. (Id.)  Subsequently, Defendant terminated FSC and associated with Lion Street Financial, a different broker located in Texas.  (Id.)

Prior to the execution of the APA, Plaintiff and Defendant entered into a Non-Disclosure Agreement and Non-Solicitation Agreement (collectively "NDA") on December 17, 2015.  (Doc. No. 3-1.)  The terms and conditions of the NDA were incorporated into the November 4, 2016 APA.  (Id.)  Pertinent here, the NDA had the following provision:

Construction and Effect.  This Agreement shall be governed by the laws of the State of Florida with venue lying in Clearwater, Florida and shall be binding to the

4

Undersigned, his/her heirs, legal representative, successors and assigns.

(Id.)  The APA expressly incorporates the NDA in Article 7, which provides as follows:

> The seller has already executed a non-disclosure and non-solicitation agreement dated December 17, 2015. All the terms of the agreement are incorporated here in this agreement. This shall remain enforceable for the period of 3 years from the date of closing.

(Id. at 9.)

> In addition, Article 19.9 of the APA states the following:

> Governing Law. This Agreement shall be governed by, integrated and construed under the laws of the State of Florida.

(Doc. No. 5-2 at 13.)

Under the terms of the NDA, Plaintiff agreed not to directly or indirectly compete with Defendant's financial planning and wealth management business by engaging in any business similar to MLFA for a period of three years following the closing of the sale.  (Doc. 3-1 at 9.) Plaintiff also agreed he would communicate and "channel to [Defendant] all knowledge, ideas, business, and customer contacts and any other matters or information which could concern or be in any way beneficial to the business of [Defendant], whether acquired by [Plaintiff] before or during the term of the [NDA]."  (Id.)

As consideration for the sale of Assets, Defendant agreed to pay MLFA a total purchase price of $5,054,000 ("Purchase Price").  (Id.)  The Purchase Price was established by the parties at 2.514 times estimated revenues and was to be paid as follows: (1) $3,468,000 in cash at closing; and (2) $1,586,000 pursuant to an Adjustable Note.  (Doc. No. 5.)  The Adjustable Note was to be paid monthly over ten years, subject to three "look-back" adjustments during the first three years following closing.  (Id.)  The "look-back" adjustments were intended to adjust the purchase price for any "shortfall in MLFA's anticipated annual revenues for the first three years following the

execution of APA." (Id. at 5.)  Thereafter, the parties made amendments to the purchase price. These adjustments apparently were not executed in Pennsylvania because Plaintiff was located in Montana and Defendant was located in Florida.[5]  (Doc. No. 5.)

According to Defendant's account of events, while Stephen Troutman was still employed by Defendant in March 2019, Plaintiff helped him form a competing business, Troutman Wealth Management.  (Id.)  Troutman Wealth Management provided wealth management and advisory services in direct competition with Defendant.  (Id.)  Then, in May 2019, Troutman and Koval resigned from Defendant without notice.  (Id.)  Prior to their resignation, however, Troutman and Koval allegedly downloaded MLFA's confidential and proprietary information, and subsequently used that information to divert clients from Defendant to Troutman's company.  (Id.)  At some point, both Troutman and Koval moved from Pennsylvania to Clearwater, Florida, where they currently reside.  Clearwater, Florida, is located in Pinellas County, Florida.

Unhappy with the actions of Plaintiff, Troutman, and Koval, Defendant filed a complaint against them and others on May 15, 2019 in Pinellas County, Florida.  See Csenge Advisory Group, LLC v. Alfred Matarazzo, et al., Case No.19-003402-CI (Fla. 6th Cir. Ct. 2019) ("Pinellas County Action").  In that case, Defendant asserted claims against Plaintiff for breach of contract,

---

[5]   On or about March 31, 2017, Plaintiff and Defendant amended the APA to reaffirm the $1,586,000 Adjustable Note obligation of Defendant and to provide for the first look-back period to conclude on July 1, 2017.  (See Doc. No. 5.)  On or about August 18, 2017, the parties entered into a second amendment to the APA where Plaintiff and Defendant agreed to adjust the purchase price by $831,547, of which $272,283 was deducted from the $3,468,000 cash paid at closing, and the remaining $559,264 was deducted from the balance due on the Adjustable Note.  (Id.)  The purchase price adjustment was to account for the first "look-back" period, during which Plaintiff and Defendant agreed to the number of customers who chose not to transfer their accounts to Defendant, and those customers who decided to remain with MLFA.  (Id.)  Another amendment was executed.  Plaintiff claims he is owed $1,260,736 as a result of this amendment.  The amounts are not relevant to the forum non conveniens analysis.

rescission, intentional misrepresentation, fraud, and tortious interference, claiming that Plaintiff and others "actively took steps to undermine any orderly transition of the Assets to [Defendant] and to divert customers and clients from [Defendant]." (Id. at 6.)  Defendant also asserted in claims against Koval and Troutman that they breached their duty of loyalty and tortuously interfered with business relationships.  (See Doc No. 3-1.)  Needless to say, the instant federal case is related to the Pinellas County Action currently pending in Florida.

On May 23, 2019, eight days after being sued by Defendant in Florida, Plaintiff brought the instant action against Defendant in the Court of Common Pleas of Montgomery County, Pennsylvania.  In the Complaint, Plaintiff contends that Defendant violated its obligations under the APA by "improperly refus[ing] to pay [Plaintiff] what is owed under the agreement."  (Doc. No. 5 at 4.)  Further, Plaintiff alleges that Defendant performed the following acts:

1. On or about August 2, 2018, despite its representation in the APA, [Defendant] discontinued its affiliation with FSC and transitioned all former MLFA customer accounts to Lion Street Financial, LLC ("Lion Street") which caused substantial damages to MLFA's business;

2. [Defendant] failed to exercise good faith in retaining key employees of MLFA, particularly Stephen Troutman and Amery Koval;

3. [Defendant] imposed unreasonable demands on [Plaintiff] and refused to release [Plaintiff] from the Transitional Duties provision of the APA;

4. [Defendant] has failed to pay its monthly obligations under the Adjustable Note as of May 2019;

5. [Defendant] has failed to pay the Matarazzo Family Notes as obligated under the APA; and

6. [Defendant] has failed to compensate [Plaintiff] for the Light Year Note,[6] which came due because of Defendant's decision to discontinue MLFA's relationship with FSC.

---

[6]  When the APA was executed, Plaintiff had a financial obligation under a promissory note he had given to MLFA's then broker-dealer, FSC, the principal of which would be payable in the

(Doc. No. 3-1.)

Regarding Defendant's alleged breach of transition duties, Plaintiff claims Defendant

"caused a number of other issues that materially and adversely impacted Plaintiff Matarazzo and

MLFA's former customers," including but not limited to:

    a.  Triggering Plaintiff Matarazzo's repayment obligation under the Light Year
        Note to FSC in the amount of $34,228.31;

    b.  Terminating customers' account history information stored at FSC, which was
        not transferred to Lion Street;

    c.  Materially disrupting back-office services by transitioning accounts to a new
        broker-dealer that was unequipped to handle the new accounts;

    d.  Failing to communicate the transition to customers adequately, which lack of
        adequate communication caused customers to leave or reduce business with
        [Defendant];

    e.  Leaving the former MLFA customers without a financial adviser in
        Pennsylvania to manage their accounts; and

    f.  Depriving Plaintiff Matarazzo of anyone at [Defendant] with whom he could
        perform his Transitional Duties.

(Doc. No. 1 at 18-19.)

On July 11, 2019, Defendant removed this civil action to this Court pursuant to 28 U.S.C.

§ 1332, § 1441, and § 1446.  On July 22, 2019, Defendant filed the instant Motion to Dismiss.

(Doc. No. 3-1.)  In the Motion, Defendant argues that the Court should dismiss the Complaint on

forum non conveniens grounds.  (Id.)  Under this theory, Defendant argues that Pinellas County,

Florida is the proper forum for this case because (i) the agreements between the parties provide for

venue in Clearwater, Florida; (ii) all pertinent factors counsel in favor of litigating the instant

---

event that Plaintiff discontinued as a registered representative with FSC.  This Note is referred
to as "the Light Year Note."  (See Doc. No. 5.)

claims in the Florida forum; (iii) this action relates to the action pending in Pinellas County, Florida; (iv) all of Defendant's employees are located and reside in Florida; and (v) key employees of MLFA and witnesses to this litigation, Amery Koval and Stephen Troutman, reside in Florida. (Id.)  Further, Defendant also notes that Plaintiff resides in Montana and can just as easily travel to Florida to litigate his case and to defend the one filed against him.  Defendant requests that the Court dismiss this case "with leave for [Plaintiff] to refile his claims as a compulsory counterclaim in the related action presently pending in Pinellas County, Florida."  (Doc. No. 3-1 at 8.)

Plaintiff contends to the contrary that this dispute belongs in this Court because Plaintiff has little or no contact with Florida, resides in Montana and works in Montana and Pennsylvania. (Doc. No. 5.)  Plaintiff asserts that venue is appropriate in Montgomery County because "[Csenge] purchased an investment advisory business in Montgomery County and contracted to provide advisory services in Montgomery County."  (Doc. No. 1 at 10.)  In addition, Plaintiff argues that the clause in the NDA providing that venue lies in Clearwater, Florida only applies to disputes arising under the NDA, and not to disputes arising under the APA.  (Id.)

Defendant's Motion to Dismiss is now ripe for disposition.  (Doc. No. 3.)  For reasons that follow, Defendant's Motion to Dismiss will be granted on forum non conveniens grounds.

## II.    STANDARD OF REVIEW

The doctrine of forum non conveniens is a discretionary device permitting a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim. Carey v. Bayerische Hypo–Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir.2004) (citations and internal quotation marks omitted); see RIGroup LLC v. Trefonisco Mgmt. Ltd., 949 F. Supp. 2d 546, 551 (S.D.N.Y. 2013).  The Third Circuit has enumerated four factors to guide a district court's consideration of the doctrine of forum non conveniens in the absence of a forum selection clause. These factors are:

(1)  the amount of deference to be afforded to plaintiffs' choice of forum;

(2)  the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable;

(3)  relevant 'private interest' factors affecting the convenience of the litigants; and

(4)  relevant 'public interest' factors affecting the convenience of the forum. [7]

Collins v. Mary Kay, Inc., 874 F.3d 176, 186 (3d Cir. 2017);  see also Kisano Trade & Invest Ltd. v. Lemster, 737 F.3d 869, 873 (3d Cir. 2013).

The six private interest factors the Court must consider are (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) convenience of the parties; (5) convenience of the witnesses; and (6) location of books and records.  See e.g. Kiker v. SmithKline Beecham Corp., 2014 WL 4948624, at *4 (E.D. Pa. Oct. 1, 2014).  The public interest factors are (1) local interest (2) practical considerations that could make trial easy, expeditious, or

---

[7]  The forum non conveniens analysis changes when the forum selection clause at issue is mandatory rather than permissive.  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49 (2013).  Thus, in this case, if the clause in the NDA is considered mandatory, the Court need not consider the private and public interest factors and Plaintiff bears the burden of demonstrating dismissal is not warranted.  As noted supra, the NDA provides in pertinent part, "This Agreement shall be governed by the laws of the State of Florida with venue lying in Clearwater Florida."  (Doc. No. 3-1 at 11.)  Arguably, the clause in the NDA is mandatory because the word "shall" used in that sentence is mandatory in nature. See e.g. Golf Scoring Sys. Unlimited, Inc. v. Remedio, 877 So. 2d 827, 829 (Fla. Dist. Ct. App. 2004) (quoting Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627, 631 (Fla. 1st DCA 1999) "Exclusivity exists where 'forum selection clauses state or clearly indicate that any litigation must or shall be initiated").  But as Defendant candidly points out, under Florida law the word "shall" only pertains to the choice of law reference in such a provision and does not pertain to the venue reference.  Therefore, for purposes of analysis, the Court will assume that the venue provision is permissive and will analyze the private and public interest factors.

inexpensive; (3) the enforceability of the judgment; (4) the public policies of the forum; (5) court congestion; and (6) familiarity of trial judge with applicable state law.  Id.

"The defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir.2009).   In deciding whether to dismiss a case for forum non conveniens, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 67 (1947); see also Lacey v. Cessna Aircraft Co., 862 F.2d 38, 42 (3d Cir. 1988).

## III.    ANALYSIS

When considering a motion to dismiss on forum non conveniens grounds, the Court "must first decide whether an adequate alternative forum exists to hear the case." Delta Air Lines, Inc. v. Chimet, S.p.A., 619 F.3d 288 (3d Cir. 2010).  If such a forum exists, it then "evaluate[s] the amount of deference due to the plaintiff's choice of forum." Id. at 294.  Finally, the court must "consider and balance" the relevant private and public interest factors.  Id.

While the Court must weigh these factors, they are not determinative in the forum non conveniens analysis.   "The forum non conveniens determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).

## IV.    WEIGHING THE FORUM NON CONVENIENS FACTORS

### A.    Amount of Deference to Plaintiff's Choice of Forum

In determining whether a court should grant a motion to dismiss on forum non conveniens grounds, the Court must first determine the amount of deference to give to a plaintiff's forum preference.  Normally, a plaintiff's choice of forum is given significant weight. See McCraw v. GlaxoSmithKline, 2014 WL 211343, at *4 (E.D.Pa. 2014); see also Shutte v. Armco Steel Corp.,

431 F.2d 22, 25 (3d Cir.1970).  In certain circumstances, however, a plaintiff's choice of forum does not receive significant deference.  See Copley v. Wyeth, Inc., 2009 WL 2160640, at *3 (E.D.Pa. 2009). Plaintiff's choice receives less deference when plaintiff files suit outside of plaintiff's home forum.  McCraw, 2014 WL 211343, at *4.

In this case, Plaintiff's forum preference is within the Eastern District of Pennsylvania. Plaintiff, however, is a resident of Montana and for this reason his choice of forum is given less deference.  Moreover, nothing in the facts indicate that when Plaintiff executed the APA he intended for the Eastern District of Pennsylvania to be his preferred forum.  He remained silent on this point and upon selling MLFA, Plaintiff moved to Montana.  (See Doc. No 3-1, 5.)  He currently does not reside in Pennsylvania.  Accordingly, although the Eastern District of Pennsylvania is his preferred forum because he filed suit there, because he is a resident of Montana, the Court will afford little deference to his choice of venue.

**B.     Adequate Alternative Forum**

Next, the Court must consider whether an adequate alternative forum exists. "The requirement of an adequate alternative forum is generally satisfied "when the defendant is 'amenable to process' in the other jurisdiction.'"  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (quoting Piper Aircraft Co., 454 U.S. 235, 254 n. 22 (1981).)  An alternative forum is "generally adequate if the plaintiff's claim is cognizable in the forum's courts."  Wilmot v. Marriott Hurghada Mgmt., Inc., 712 F. App'x 200, 203 (3d Cir. 2017).

In this case, an adequate alternative forum exists in Pinellas County, Florida.  Plaintiff's claims against Defendant are cognizable there.  In fact, Defendant has instituted suit there against Plaintiff and others essentially based on violations of the APA.  (See Doc. No. 3-1.)  Defendant even invites Plaintiff to file a counterclaim against it in that court.

In this regard, Defendant is a Florida Limited Liability Company located in Clearwater, Florida and is amenable to service of process there.  And most notably the APA incorporates the terms of the NDA which reference Clearwater, Florida, as the venue for the Agreement.  The clause in the NDA reads as follows:

> Construction and Effect.  This Agreement shall be governed by the laws of the State of Florida with venue lying in Clearwater, Florida and shall be binding to the Undersigned, his/her heirs, legal representative, successors and assigns.

(Id.)

As noted supra, the APA states:

> Governing Law. This Agreement shall be governed by, integrated and construed under the laws of the State of Florida.

(Doc. No. 5-2 at 13.)

There are no facts indicating that this forum—the Eastern District of Pennsylvania—is a more convenient forum than Pinellas County, Florida.  In fact, it appears that Pinellas County, Florida is a more suitable forum than the Eastern District of Pennsylvania because there is already an action involving the same parties and facts filed in that County, and Plaintiff may assert counterclaims against Defendant in that action.  Therefore, this factor warrants transference, or in this case, dismissal.

**C.    Private Interest Factors**

**1.    Plaintiff's Choice of Forum**

As noted previously, the Court must consider plaintiff's choice of forum.  The "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'"  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (quoting Ungrund v. Cunningham Bros., Inc., 300 F.Supp. 270, 272 (S.D.Ill.1969)).  However, a plaintiff's choice of forum is also given less weight "where none of the operative facts

of the action occur in the forum selected by the plaintiff." Nat'l Mortg. Network, Inc. v. Home Equity Ctrs., Inc., 683 F.Supp. 116, 119 (E.D. Pa.1988).

In this case, Plaintiff's forum preference is within the Eastern District of Pennsylvania. Plaintiff, however, is a resident of the State of Montana and accordingly his choice of forum is given less deference. In addition, it appears that none of the critical, operative facts underlying Plaintiff's claims occurred in Eastern District of Pennsylvania because Defendant's alleged violations primarily occurred where Defendant is located, Clearwater, Florida. To recap, in the Complaint, Plaintiff asserts the following claims against Defendant: (1) breach of contract; (2) breach of good faith and fair dealing; and (3) negligence. (Doc. No. 1.) To support them, Plaintiff specifically alleges that Defendant breached its obligations under the APA by:

1. On or about August 2, 2018, despite its representation in the APA, [Defendant] discontinued its affiliation with FSC and transitioned all former MLFA customer accounts to Lion Street Financial, LLC, which caused substantial damages to MLFA's business;

2. [Defendant] failed to exercise good faith in retaining key employees of MLFA, particularly Stephen Troutman and Amery Koval;

3. [Defendant] imposed unreasonable demands on [Plaintiff] and refused to release [Plaintiff] from the Transitional Duties provision of the APA;

4. [Defendant] has failed to pay its monthly obligations under the Adjustable Note as of May 2019;

5. [Defendant] has failed to pay the Matarazzo Family Notes as obligated under the APA; and

6. [Defendant] has failed to compensate [Plaintiff] for the Light Year Note, which came due because of Defendant's decision to discontinue MLFA's relationship with FSC

(Id. at 23-28.)

Based on these allegations, it is clear that the underlying facts pertinent to Plaintiff's claims primarily occurred in Florida. First, Plaintiff argues that Defendant breached the APA by

terminating Plaintiff's securities broker, FSC, and transferring FSC's responsibilities to another broker, Lion Street, located in Texas.  (Id.)  Defendant's termination of FSC occurred in Florida. (Id.)

Second, Plaintiff asserts that Defendant failed to communicate the transition of ownership to customers.  (Id.)  Under this claim, Defendant's inaction or failure to communicate could only occur in Florida because Defendant's three members and principal place of business are located there.  (Id.)  In any event, Defendant could contact its customers from any location, including Florida.  It is not required to be physically present in Pennsylvania in order to notify customers about the transition.

Third, Plaintiff argues that Defendant failed to retain "key employees of MLFA" Stephen Troutman and Amery Koval.  (Id.)  Both Troutman and Koval currently reside in Clearwater, Florida and if Defendant failed to maintain them as employees that decision would have been made in Florida.  If Defendant failed to retain them anywhere, it would most likely have been at its Florida headquarters because they reside in Florida.

Regarding Defendant's failure to pay its monthly obligation under the adjustable note or any other financial requirement, this too would have occurred in Florida.  That is where Defendant's books and accounting records would be located.  (Id.)  Presumably, the failure to pay would occur at the same place where the books and accounting records are maintained.

Lastly, Plaintiff has not proffered any facts indicating that he intended Pennsylvania to be his home state.  Plaintiff sold the assets of MLFA and moved to Montana.  There is no evidence of him maintaining significant contacts in Pennsylvania, other than his claim that MLFA and its customers were located there.  Therefore, because Plaintiff's home forum is in Montana and the critical, operative facts underlying Plaintiff's claims occurred in Clearwater, Florida, Plaintiff's

choice of forum, within the Eastern District of Pennsylvania, is given less deference.  This is consistent with the first factor already considered in the forum non conveniens analysis.  But as a private interest factor, because little deference is given to Plaintiff's choice of forum, it favors transference, or in this case, dismissal.

### 2.  Defendant's Forum Choice

The second factor the Court must consider is Defendant's choice of forum.  Transfer should not be granted on the grounds of a defendant's forum preference where it would "merely shift the inconvenience from the defendant to the plaintiff."  Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib., 2008 WL 269487, at *3 (E.D.Pa. 2008).

Defendant's choice of forum is state court located in Pinellas County, Florida.  This preference is established beyond peradventure because that is where Defendant has sued Plaintiff. Defendant is located in Clearwater, Florida, and, at all times pertinent to the instant action, maintained its primary office and operations in Florida.  (See Doc. No. 3-1.)  Its books and records and three members are located there.  (Id.)  For Defendant, Florida is a significantly more convenient forum than the Eastern District of Pennsylvania.

Furthermore, it should be highlighted that Plaintiff has not offered any acceptable explanation as to why he would be inconvenienced by having this case litigated in Florida.  He only relies upon the location of MLFA and its customers being located in Pennsylvania.    But MLFA is only an entity and its books and records with current technology are accessible in Florida. Moreover, the testimony of customers could be obtained by video deposition and it is unlikely that a considerable number would be required to testify.  The testimony of customers would only relate to one claim that Defendant failed to transition and communicate the transition to customers.  This is only one claim among many others asserted by Plaintiff against Defendant.  Therefore, it is

unlikely that Plaintiff will be inconvenienced by litigating this case in Pinellas County, Florida. Accordingly, this factor weighs in favor of transference, or in this case, dismissal.

### 3. Where the Claim Arose

The third factor—where the claim arose—also weighs in favor of transference, or in this case, dismissal. "Typically, the most appropriate venue is determined by [this] factor." McCraw v. GlaxoSmithKline, 2014 WL 211343 at 4 (E.D. Pa. 2014). "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc. v. Kreatech Biotech. B.V., 2007 WL 4365328, at *5 (E.D.Pa. Dec. 11, 2007).

Here, Defendant contends that this factor weighs heavily in favor of transfer because few of the operative facts occurred in the Eastern District of Pennsylvania. The Court agrees. As noted supra, Plaintiff's allegations of wrongdoing primarily occurred where Defendant resides, the state of Florida. Thus, the operative events involving the alleged breach of the APA occurred in Florida. It would be more efficient and considerably more convenient to try this case there because that is where key witnesses are located who can affirm or deny in their testimony claims made here. Therefore, this factor supports transference, or in this case, dismissal.

### 4. Convenience of the Parties

Next, the Court must consider the convenience to the parties in this action. First, Plaintiff resides in Montana. It would not be a greater inconvenience for him to travel to Florida rather than Pennsylvania to litigate his case. There is no evidence that Plaintiff will incur increased costs if venue is in Florida. In fact, Plaintiff has already acknowledged that Florida is a convenient place for APA purposes, because he signed the Agreement knowing that it incorporates the term in the NDA. (See Doc. No. 3-1 at 9.)

Second, as mentioned, Defendant is located in Florida and all of its members reside there. Because venue in Florida is more convenient for Defendant, and Florida is no more burdensome for Plaintiff than venue in the Eastern District of Pennsylvania, this factor tips in favor of transference, or in this case, dismissal.

### 5. Convenience of Witnesses

The next factor the Court must consider is whether the Eastern District of Pennsylvania is a convenient forum for the witnesses in this action.  The convenience of key nonparty witnesses and, more importantly, the ability to compel them to testify in person at trial, is the main focus of this factor.  Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).   The party seeking transfer must only provide enough information about proposed witnesses and their expected testimony "to enable the District Court to balance the parties' interests."  Id.

Here, Defendant has proffered information about several key witnesses in this case who are located in Florida.  They are Amery Koval and Stephen Troutman, who reside in Clearwater, Florida, which is within Pinellas County, Florida.  Additionally, Defendant's three members, John Csenge, Stephen Csenge, and Eric Caisse, all reside in Florida.  (Doc. No. 3-1.)  Accordingly, for all concerned, Pinellas County, Florida would be a more convenient forum than the Eastern District of Pennsylvania.

Plaintiff claims that if this case is litigated in Florida, customers of MLFA located in Pennsylvania would be inconvenienced.  But as noted earlier, the location of MLFA and the customers is not critical.  And regardless of whether this case was litigated in the Eastern District of Pennsylvania or Pinellas County, Florida, Plaintiff would have to travel from his home state of Montana.  Thus, for all these reasons, this factor weighs in favor of transference, or in this case, dismissal.

### 6.  Locations of Books and Records

Next, the Court will consider the location of books and records in this action.  This factor is only relevant to the extent that books and records could not be produced in the alternative forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).  In addition, "[t]he technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis."  Lomanno v. Black, 285 F.Supp.2d 637, 647 (E.D.Pa. 2003).

In this case, books and records are located at Defendant's principal place of business in Florida.  Some may also be located in Pennsylvania.  However, given that many books and records are readily available online or through email, there is a high likelihood that these documents will be easily accessible regardless of where this case is litigated.  Therefore, this factor appears to be neutral.

### D.      Public Interest Factors

Next, the Court must consider the public interest factors in the forum non conveniens analysis.  There are six public interest factors that must be analyzed.  See e.g. McCraw, 2014 WL 211343 at *6.  They will be discussed next.

### 1.  Local interest

When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale.    Id. at *6 (citing In re Eastern Dist. Repetitive Stress Injury Litig., 850 F.Supp. 188, 195 (E.D.N.Y. 1994)).

Here, Plaintiff claims that he sustained injuries in Pennsylvania.  However, it is unclear where his injuries occurred.  He sold the assets of the business located in Pennsylvania, but he resides in Montana.  He has filed suit alleging breach of contract, breach of good faith and fair

dealing, and negligence.  But where those injuries occurred is unclear.  For this reason, public interest would not necessarily support adjudicating the controversy in Pennsylvania.  For purposes of analysis, however, the Court will consider this factor as neutral.

### 2.  Practical Considerations

Next, the Court must consider the practical considerations involved in litigating the instant case.   Practical considerations are factors that would make a trial easier, expeditious, or inexpensive.  See e.g. McCraw, 2014 WL 211343 at *6.

In this case, litigating in Florida would make the trial easier, expeditious, and inexpensive. Defendant and critical witnesses are located there.  Requiring Plaintiff to travel to Florida would be no more burdensome than traveling to Pennsylvania.  Books and records are located in Florida or can easily be accessible from Pennsylvania.  If the litigation was in the Eastern District of Pennsylvania, Plaintiff, Defendant, and relevant witnesses would have to travel considerable distances.   Thus, practical considerations favor a Florida venue over the Eastern District of Pennsylvania.  Therefore, this factor is in favor of transference, or in this case, dismissal.

### 3.  Enforceability of the Judgment

The next public interest factor—enforceability of the judgment—is a neutral factor. Regardless of where this case is litigated, a judgment can be enforced in Florida, Pennsylvania or Montana.  No law has been brought to the Court's attention that these states have a unique impediment to the enforcement of a judgment.  Therefore, this factor is neutral.

### 4.  Public Policies of the Forum

The Court must also consider public policies of both forums to determine where litigation is more appropriate.  In this case, neither forum has a public policy that would favor either one to hear this case.  Accordingly, this factor is a neutral one.

**5.   Court Congestion in this Forum**

The next public factor the Court must consider is court congestion in the forum.  This case would not create any docket congestion in this Court.  Therefore, this factor weighs against dismissal.

**6.   Familiarity of Trial Judge with Applicable State Law**

In a diversity case, a federal court ordinarily applies the choice-of-law rules of the state in which it sits.  Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  Pennsylvania uses a two-step process to resolve choice-of-law questions.  Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 189 (E.D. Pa. 2007).  First, the court must determine whether there is a real conflict in the laws of each interested state that would affect the outcome of the case.  Id.  Second, if there is an actual, significant conflict, the court must decide which state has the greater interest in applying its law.  Id.

Based on the allegations asserted in the Complaint, there is no conflict on the claim of breach of contract of the APA, because the parties have agreed that Florida law applies.  As noted above, the choice of law provision in the NDA, which has been incorporated into the APA, states that it "shall be governed by the laws of the State of Florida." (Id. at 4.)  Moreover, there is a specific provision in the APA that states that it "shall be governed by, integrated and construed under the laws of the State of Florida."  (Doc. No. 5-2 at 13.)

Regarding the claim of breach of good faith and fair dealing, under Florida law, "a breach of the implied covenant of good faith and fair dealing is not an independent cause of action" from a breach of contract claim.  See e.g. Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306 (11th Cir. 2009).  Similarly, Pennsylvania law does not recognize an independent cause of action

for breach of a covenant of good faith and fair dealing when conjoined with a breach of contract claim.  See e.g. McCabe v. Marywood Univ., 166 A.3d 1257 (2017).  Therefore, there is no conflict of law because under Florida and Pennsylvania law, Plaintiff is barred from bringing a separate cause of action for breach of good faith and fair dealing when this claim is made in conjunction with a claim for breach of contract.

Regarding the claim of negligence, under Pennsylvania law,  the elements are: (1) duty; (2) breach; (3) causation; and (4) damages. See e.g. Wittrien v. Burkholder, 965 A.2d 1229 (Pa. Super. Ct. 2009).  A claim of negligence under Florida law has the same elements.  See e.g. Bryan v. Galley Maid Marine Prod., Inc., 287 So. 3d 1281 (Fla. Dist. Ct. App. 2020) ("the elements of a negligence cause of action are duty, breach, causation, and damages.")  Therefore, there is no conflict under the law of each state regarding negligence that would affect the outcome of the case.

Therefore, it is clear that Florida substantive law will apply to the breach of contract claim and there is no conflict between Florida and Pennsylvania law on negligence and breach of good faith and fair dealing.   But given these claims, this Court can readily determine and apply pertinent law.  Accordingly, this factor weighs against transference, or dismissal.

### E.        Balancing the Factors

After considering the parties' arguments, the Court finds that a large majority of the factors weigh heavily in favor of transference, or in this case, dismissal when compared to the factors that weigh against dismissal.  Factors favoring dismissal are:

- Adequate Alternative Forum
- Plaintiff's Forum Choice
- Defendant's Forum Choice
- Where the Claim Arose
- Convenience of the Parties
- Convenience of the Witnesses
- Practical Considerations

Factors weighing against dismissal are:

- Court Congestion in the Forum
- Familiarity of Trial Judge with Applicable State Law

Factors that are neutral are:

- Deference to Plaintiff's Choice of Forum
- Location of Books and Records
- Local Interest
- Enforceability of the Judgment
- Public Policies of the Forum

Thus, seven factors weigh in favor of transference, or in this case, dismissal, two weigh against dismissal, and five are neutral. Given this balance, dismissal is warranted in this case. In addition, Plaintiff has the option of filing a counterclaim against Defendant in the Pinellas County Action.

## V.   CONCLUSION

For the reasons set forth above, the Court concludes that for the convenience of the parties and witnesses, and in the interest of justice, this action should be dismissed on forum non conveniens grounds. Accordingly, the Court will grant Defendant's Motion to Dismiss the Complaint (Doc. No. 3-1). An appropriate Order follows.